THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE COMPANY, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 4:19-CV-1498 |
| AMSPEC HOLDING CORP., | § | |
| | § | |
| DEFENDANT. | § | |

**PLAINTIFF/COUNTER-DEFENDANT EVANSTON INSURANCE COMPANY'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56, Plaintiff/Counter-Defendant Evanston

Insurance Company ("Evanston") files this Brief in Support of its Motion for Summary Judgment

("Motion") on its complaint for declaratory judgment, as well as all counterclaims asserted by

Defendant/Counter-Plaintiff AmSpec Holding Corporation ("AmSpec").

## I.
## SUMMARY OF ARGUMENT

Evanston filed this action seeking a declaratory judgment by the Court that AmSpec's

claim for insurance proceeds was not covered under the insurance policy between the parties.

AmSpec filed counterclaims for breach of contract and a number of extra-contractual claims.

AmSpec claims it suffered business interruption losses and extra expense because the

United States Coast Guard closed a number of ports to inbound and outbound traffic prior to

Hurricane Harvey's landfall. AmSpec's insurance policy only provides coverage if access to

covered locations or dependent locations is specifically denied by an order of civil authority that

is a result of direct physical loss of or damage to property. Because the ports were closed as a

precautionary measure, there is no coverage under the policy, and Evanston has not breached its contract to AmSpec for rightfully denying this claim.

Because AmSpec does not have a valid breach-of-contract claim, all of its extra-contractual counterclaims are invalid as well. This Court should therefore grant summary judgment for Evanston on all counts.

## II.
## FACTUAL BACKGROUND

### A.      The Policy

Evanston provides insurance coverage to AmSpec under policy number MKLV7IM0048001 (the "Policy") for the period beginning November 15, 2016 and ending November 15, 2017.[1] The Policy insured multiple AmSpec buildings at multiple locations in Texas, including buildings and locations located in or near Houston and Corpus Christi, Texas.

The Policy provides coverage for real and personal property, business interruption, and extra expense. "Business Interruption means loss resulting from necessary interruption of business conducted by the Insured and caused by direct physical loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein."[2] "Extra Expense" means "the excess cost necessarily incurred to continue the operation of the Insured's business or facility that would not have been incurred had there been no loss or damage by any of the perils covered herein during the term of this policy to Real and/or Personal Property as covered herein."[3]

---

[1]      The Policy is attached to this Motion as Appendix A-1.

[2]      Policy, Appendix A-1, at 178.

[3]      *Id.* at 179.

Coverage for business interruption losses and extra expenses are limited to that incurred during the "period of restoration."[4] The "period of restoration" "(a) Begins with the date of direct physical loss or damage by any of the perils covered herein, at the described premises; and (b) Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."[5]

The Policy extends this coverage to Dependent Locations under Endorsement 4, Income Coverage from Dependent Domestic & Foreign Locations ("Dependent Location Endorsement"):

**Dependent Locations –**
1.   Coverage -- Coverage for earnings and/or extra expense is extended to loss of earnings or extra expenses that "you" incur during the "restoration period" when "your" "business" is interrupted by direct physical loss or damage, caused by a covered peril, to property at a "dependent location" described on the schedule.[6]

The Policy defines Dependent Locations as "locations that are operated by others and that 'your' 'business' depends on, as described below."[7] The Policy further states that:

Dependent Locations include but are not limited to:

a.   contributing locations, these are "your" suppliers' locations or locations of suppliers that deliver services or materials to others for "your" account. Contributing locations do not include suppliers of:

1)   water;

2)   telecommunications, including but not limited to Internet service providers; or

3)   power;

---

[4]   *Id.* at 179–80.

[5]   *Id.*

[6]   *Id.* at 134 (Endorsement 4).

[7]   *Id.* In the Policy, the words "you", "your" or "yours" refer to the Named Insured shown in the Declarations— that is, AmSpec. *Id.* at 164.

    b.      recipient locations, these are locations that receive "your" products;

    c.      leader locations, these are locations that attract customers to "your" "business"; or

    d.      manufacturing locations, these are locations that make products for delivery to "your" customers under contract of sale.[8]

The limit for Dependent Location coverage is \$250,000.[9] Additionally, the Policy does not pay for loss of earnings until after the first forty-eight hours following the direct physical loss of or damage to property at a described Dependent Location, though it does cover extra expenses during this period.[10]

    The Policy additionally provides coverage for Interruption by Civil Authority as follows:

    "We" extend "your" coverage for earnings and extra expense to include loss sustained while access to "covered locations" or a "dependent location" is specifically denied by an order of civil authority. This order must be a result of direct physical loss of or damage to property, other than at a "covered location" and must be caused by a covered peril.

    This Income Coverage Extension is limited to 60 consecutive days from the date of the order.[11]

A forty-eight hour waiting period applies to Civil Authority coverage as well.

## B.    Hurricane Harvey

    AmSpec claims coverage under the Policy's Civil Authority provision and/or under the Dependent Location provision, both of which are described above.   Hurricane Harvey began as a tropical wave in the Atlantic Ocean on August 13, 2017, weakened, and then re-formed into a

---

[8]    *Id.* at 134.

[9]    *Id.*

[10]    *Id.*

[11]    *Id.* at 132 (Endorsement 6).

hurricane on August 24, 2017.[12] "By Wednesday evening [August 23], Harvey was forecast to make landfall as a hurricane somewhere over the Texas Coast."[13]

The United States Coast Guard took a number of steps in preparation for Hurricane Harvey's arrival. On August 22, 2017, the acting Coast Guard Captain of the Port for Sector Corpus Christi issued Marine Safety Information Bulletin 02-17 "[a]s a precautionary measure for weather disturbance", setting Port Condition Whiskey for Port Corpus Christi because "[g]ale force winds associated with tropical cyclone activity [were] expected to arrive within 72 hours."[14]

Effective August 23, 2017, the Captain of the Port for Sector Houston-Galveston issued Marine Safety Information Bulletin 09-17, setting Port Condition X-Ray for the Port of Freeport. The Bulletin noted that "[t]ropical storm force winds from Tropical Depression Harvey are expected to make landfall within 48 hours."[15] The bulletin stated that vessel and facility operators should "[a]nticipate that Port Condition Yankee will be set via a subsequent Marine Safety Information Bulletin, 24 hours before tropical storm force winds are expected to make landfall in the noted above COTP [Caption of the Port] zone. Upon the setting of Port Condition Yankee, the port will be closed to inbound traffic."[16]

On August 24, 2017, at 6:57 PM EDT, the Coast Guard declared Port Condition Yankee for Sector Houston-Galveston, which includes the ports of Houston, Texas City, Galveston,

---

[12]    "Major Hurricane Harvey - August 25-29, 2017," National Weather Service, https://www.weather.gov/crp/hurricane_harvey.

[13]    *Id.*

[14]    *See* Coast Guard Orders, Appendix B at 1. Evanston requests that the Court take judicial notice of the attached Coast Guard Orders, as "highly indisputable public records." *See Tu Nguyen v. Bank of Am., N.A.*, 728 Fed. App'x 387 (5th Cir. 2018) (citing Fed. R. Evid. 201(b)(2)).

[15]    *Id.* at 2.

[16]    *Id.*

Freeport and Corpus Christi.[17] Under Port Condition Yankee, the Coast Guard banned all inbound traffic to these ports and required vessels and barges to seek an alternate destination.[18]

On August 25, 2017, at 6:43 PM EDT, the Coast Guard declared Port Condition Zulu for Sector Houston-Galveston.[19] Under this stricter condition, the Coast Guard prohibited vessels and barges from transiting the safety zone, and it ordered all cargo and bunkering operations to cease.[20]

According to the National Weather Service, Hurricane Harvey made landfall in Texas around 10 PM on August 25, 2017.[21]

On August 28, 2017, at 10:00 AM, the Coast Guard declared Port Condition Yankee for Port of Port Arthur, which includes the ports of Houston, Texas City, Galveston, Freeport and Corpus Christi.[22] Under Port Condition Yankee, the Coast Guard banned all inbound traffic to these ports and required vessels and barges to seek an alternate destination.[23] The order states, likely erroneously, that tropical winds from Hurricane Harvey were expected to make landfall with 24 hours.[24]

---

[17]    United States Coast Guard, "Coast Guard prepares response efforts for Hurricane Harvey" (August 24, 2017 06:57 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b2f48a.

[18]    *Id.*

[19]    United States Coast Guard, "Update: Coast Guard prepares response efforts for Hurricane Harvey" (August 25, 2017 06:43 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b32e9b.

[20]    *Id.*

[21]    "Major Hurricane Harvey - August 25-29, 2017," National Weather Service, https://www.weather.gov/crp/hurricane_harvey.

[22]    United States Coast Guard, "Marine Safety Information Bulletin" (August 28, 2017 10:00 AM), https://www.atlanticarea.uscg.mil/Portals/7/Eigth%20District/vtsPortArthur/documents/MSIB/MSIB_09-17_YANKEE-s.pdf?ver=2018-02-06-120748-217.

[23]    *Id.*

[24]    *Id.*

---

On August 28, 2017, at 6:00 PM, the Coast Guard declared Port Condition Zulu for the Port of Port Arthur.[25] Under this stricter condition, the Coast Guard ordered all cargo and bunkering operations to cease.[26] The order states, likely erroneously, that tropical winds from Hurricane Harvey were expected to make landfall with 12 hours.[27]

According to the Port of Port Arthur's director of trade development, Anthony Theriot, "There was no damage to our port whatsoever."[28] Though the port never officially closed, it was closed to vessel traffic.[29]

## C.   **The Claim**

On or about August 30, 2017, AmSpec notified Evanston of claimed business income and extra expense losses due to the closing of multiple ports in advance of Hurricane Harvey (the "Claim").  AmSpec claimed it incurred such losses at four insured locations: 2310 Hwy 69 N, Nederland, Texas; 2800 B Loop 197 S, Texas City, Texas; 1836 Miller Cut Off Road, La Porte, Texas; and 301 N. Omaha Dr., Corpus Christi, Texas.

Evanston timely acknowledged the claim on August 30, 2017 and assigned claim number MXMP45967 to the Claim.[30]   Evanston retained independent adjusting firm Engle Martin &

---

[25]     United States Coast Guard, "Marine Safety Information Bulletin" (August 28, 2017 06:00 PM), https://www.atlanticarea.uscg.mil/Portals/7/Eigth%20District/vtsPortArthur/documents/MSIB/MSIB%2010-17_Zulu.pdf?ver=2018-02-06-120746-060.

[26]     *Id.*

[27]     *Id.*

[28]     Paul Scott Abbott, "Harvey can't keep Texas ports down," AJOT (September 6, 2017) https://www.ajot.com/insights/full/blog-harvey-cant-keep-texas-ports-down.

[29]     *Id.*

[30]     Evanston Claim Acknowledgement and Investigation, Appendix A-2.

---

Associates to investigate the Claim and notified AmSpec of its involvement in the investigation on August 30 as well.[31] AmSpec retained public adjuster Stephen Figlin with Young Adjustment.

On January 3, 2019, AmSpec's public adjuster submitted a statement to Evanston indicating that AmSpec was making its claim solely on the basis that the United States Coast Guard closed a number of Texas ports in advance of Hurricane Harvey.[32] The ports identified by AmSpec as closed by the Coast Guard are the Port of Corpus Christi, the Port of Texas City, the Port of Galveston, the Port of Port Arthur, and the Port of Houston.[33]

AmSpec's claimed losses are based entirely on the port closures. AmSpec has represented that there was no significant damage due to Hurricane Harvey at any of its four property locations, and none of that damage caused the claimed business interruption.[34] AmSpec has made no claim for damage to insured property or business interruption due to closure of the insured properties themselves. AmSpec's only basis for its Claim is the claimed loss of business interruption and extra expense incurred due to closure of the ports, under the Policy's Civil Authority provision and more recently under the Dependent Location provision.[35]

AmSpec claims a business interruption loss totaling $912,524.00 and an extra expense claim totaling $11,224.66 over a nine-day period beginning August 25, 2017 and ending September 2, 2017.[36] However, AmSpec has not submitted any documentation to Evanston in

---

[31]   *Id.*

[32]   *See* AmSpec Public Adjuster Statement, Appendix A-3.

[33]   *Id.*; ECF No. 8 at 5.

[34]   *See* AmSpec Public Adjuster Statement, Appendix A-3 ("Except for the start-up and recalibration of the shutdown equipment no other property damage was sustained.").

[35]   AmSpec Claim Package, Appendix A-4, at 3 ("This claim is submitted under the 'Interruption by Civil Authority' endorsement for the full period allowed of 60 days.").

[36]   *Id.* at 1.

support to show that there was any direct physical loss or damage to property at a "dependent location" (that is, the ports), that any ports were shut down due to physical loss or damage by any civil authority, or that AmSpec sustained a loss of earnings or incurred extra expenses when its business was interrupted by the alleged physical loss or damage at any of the ports.

In response to Evanston's requests for claim support, Amspec and its public adjuster advised as follows: "[t]he shutdown dates of the ports by the Coats [sic] Guard due to hurricane related damages is documented and included in the claim package" and "[t]he damage associated with the port closings has been documented in the Coast Guard port shutdown orders supplied and demonstrates the cloing [sic] by Civil Authority and the reason as Hurricane related damage and events."[37] Prior to suit, Evanston did not receive any further support from AmSpec beyond the Coast Guard orders and news articles found in the claim package.

On January 17, 2019, AmSpec's public adjuster confirmed to Evanston's public adjuster that all claim support had been presented and no further information was forthcoming.[38]

Evanston denied AmSpec's claim in writing on April 3, 2019.[39] The denial letter explained in detail the reasons for the denial, which are the same as the rationale supporting this Motion for Summary Judgment—there was no loss due to denial of access by an order of civil authority as a result of physical loss or damage.[40]

---

[37]   *See* AmSpec Public Adjuster Statement, Appendix A-3. AmSpec's Claim Package is included as Appendix A-4. The relevant section is entitled "Port Closing Information" and begins on page 76 of Appendix A-4.

[38]   Evanston Denial Letter, Appendix A-5.

[39]   *Id.*

[40]   *Id.*

D.     **The Lawsuit**

Evanston filed a Declaratory Judgment action in this Court on April 24, 2019, asking the court for a finding of no coverage under both the Civil Authority and the Dependent Location provisions.[41]  Evanston specifically sought a declaration (1) that Evanston timely and appropriately investigated and adjusted the Claim; (2) that there is no coverage under the Policy for the Claim; and (3) that Evanston appropriately denied Amspec's Claim.[42]

Amspec filed counterclaims for breach of contract, violations of the Texas Insurance Code, and bad faith.[43]  AmSpec's counterclaims state that AmSpec was required to shut down four of its locations due to direct physical damage and the closing of ports by the Coast Guard.[44] AmSpec has provided no evidence of direct physical damage to its own locations, and during the adjustment period it stated that it was making no claim based on direct physical damage to any of its own insured locations.[45]

On July 15, 2019, the Court held an initial conference in this case. At the initial conference, the Court inquired about the damage that supposedly resulted in closure of the ports. AmSpec was unable to provide any evidence of any damage to the ports or any damage that caused port closures.

The parties mediated on September 3, 2019, but they did not come to an agreement.

---

[41]     Evanston's Complaint, ECF No. 1.

[42]     *Id.* at 4.

[43]     AmSpec's Answer and Counterclaims, ECF No. 8.

[44]     *Id.* at 5.

[45]     *See* AmSpec Public Adjuster Statement, Appendix A-3.

## III.
## LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[46] The appropriate inquiry for the Court to make is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[47]

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.[48] In sustaining this burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[49]

In response, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial."[50] Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial.[51] Conclusory allegations are also

---

[46]    Fed. R. Civ. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999).

[47]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

[48]    *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001).

[49]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[50]    *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57).

[51]    *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

insufficient, as the nonmovant cannot defeat a summary judgment motion without significant, probative evidence in support of their claim.[52]

# IV.
## ARGUMENT AND AUTHORITIES

The Court should grant summary judgment for Evanston on all claims. AmSpec has not met its burden to prove coverage under the Policy. There is no coverage under the Policy because the orders of civil authority at issue, the port closings, were a precautionary measure and not issued as a result of physical loss or damage. AmSpec has no proof of damage to a covered location or dependent location that could establish coverage. Finally, because AmSpec does not have a valid breach-of-contract claim, it does not have any valid extra-contractual claims.

## A.    AmSpec has not met its burden to prove coverage under the Policy.

The insured has the initial burden of establishing coverage under the terms of an insurance policy.[53] The insurer has the burden of proving the applicability of any exclusions to the policy.[54] When the insurer has established that an exclusion applies, the burden shifts to the insured to prove that an exception to the exclusion applies.[55]

This action involves only the insured's burden of establishing coverage, which AmSpec has not met. The Claim does not involve any exclusions or exceptions to any exclusions. Simply put, Evanston denied AmSpec's Claim because there was no coverage for the Claim under the

---

[52]    *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994).

[53]    *JAW The Pointe, L.L.C. v. Lexington Ins. Co*., 460 S.W.3d 597, 603 (Tex. 2015) (citing *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010)); *L-Con, Inc. v. CRC Ins. Services, Inc.*, 122 F. Supp. 3d 627, 637 (S.D. Tex. 2015), *as amended* (Aug. 24, 2015) (citing *Guar. Nat. Ins. Co. v. Vic Mfg. Co*., 143 F.3d 192, 193 (5th Cir. 1998)).

[54]    *Id.*

[55]    *Id.*

basis for which AmSpec claimed coverage: the Civil Authority provision. As the following analysis will demonstrate, AmSpec has not met its burden to establish coverage under the Policy.

**B.    Because there was no order of civil authority issued as a result of physical loss or damage, the Court should grant summary judgment to Evanston on its declaratory judgment claim and deny AmSpec's breach of contract claim.**

The Policy's Interruption by Civil Authority coverage extension provides:

"We" extend "your" coverage for earnings and extra expense to include loss sustained while access to "covered locations" or a "dependent location" is specifically denied by an order of civil authority. This order must be a result of direct physical loss of or damage to property, other than at a "covered location" and must be caused by a covered peril.[56]

Evanston has requested that the court declare that there is no coverage under the Policy's Interruption by Civil Authority coverage, because AmSpec suffered no loss from an order of civil authority that was the result of direct physical loss of or damage to property. AmSpec has also filed a breach of contract claim based on Evanston's denial of coverage.

Courts—particularly those in the Fifth Circuit—have routinely held that an action of civil authority must be in response to damage to other property that has already taken place and not simply in response to the threat of, or the anticipation of, future property damage or personal safety.[57] "The general rule is that "[c]ivil authority coverage is intended to apply to situations

---

[56]    Policy, Appendix A-1, at 132 (Endorsement 6).

[57]    *See, e.g.*, *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) (finding the insured failed to demonstrate the necessary nexus between prior property damage and the mandatory evacuation of New Orleans where nothing showed that the order, which like here was issued as Hurricane Gustav was approaching, was issued due to physical damage to property, either prior distant property damage in the Caribbean or property damage in Louisiana when the order was issued, as opposed to being issued because of possible storm surge, high winds and flooding and Gustav's projected path); *Not Home Alone, Inc. v. Philadelphia Indem. Ins. Co.*, No. 1:10-CV-54, 2011 WL 13214381, at *6–7 (E.D. Tex. Mar. 30, 2011), *report and recommendation adopted*, No. 1:10-CV-54, 2011 WL 13217067 (E.D. Tex. Apr. 8, 2011) (holding that evacuation orders issued due to "anticipated threat of damage" from Hurricane Ike did not provide coverage under a civil authority provision because it was not "*due to* direct, preexisting physical loss of or damage to property *other than at the described premises*"); *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, 2010 WL 4026375 (E.D. La. Oct. 12, 2010) (identifying the required nexus between the civil authority order and physical damage and stating that the civil authority coverage "was not written with the expectation that a civil authority order prohibiting access would issue *before* the property

where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property."[58]

 A court in the Southern District has previously denied coverage on a civil authority claim similar to AmSpec's.   In *South Texas Medical Clinics, P.A. v. CNA Financial Corporation*, authorities in Wharton County ordered the evacuation of the county based on the likely path and intensity of Hurricane Rita.[59] The insured, which operated medical clinics in Wharton County and surrounding counties, made a claim to its insurer for business income losses when its clinics were closed because of the evacuation order.[60] The clinics were not damaged by the hurricane.[61] The insurer denied the claim on the basis that the evacuation was not "due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss," as the insurance policy provided.[62]

---

damage that forms the basis of the order actually occurs.  The direct nexus between the damage sustained and the order that the policy requires suggests that the Policy was designed to address the situation where damage occurs and the civil authority *subsequently* prohibits access."); *United Airlines, Inc. v. Insurance Co. of the State of Penn.*, 439 F.3d 128 (2d Cir. 2006) (holding that the civil authority order shutting down Reagan National Airport following the September 11, 2001 terrorist attacks was "caused by fears of future attacks" and not by the actual physical damage inflicted on the Pentagon, which was damaged *after* the order was issued; thus, there is no causal relationship between the civil authority order and the damage to other property, as required for coverage); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03–CV–3154–JEC, 2004 WL 5704715, at *7 (N.D. Ga. Dec. 15, 2004) (finding that the insured was "unable to establish that any order of civil authority was issued as the 'direct result' of the attacks on the World Trade Center, the Pentagon, or Stony Creek Township, Pennsylvania" and further finding that the insured could not carry its burden to satisfy the nexus because "the ground stop order was issued as a result of the threat of additional terrorist acts involving the nation's airlines and not because of the existing disasters at the World Trade Center, the Pentagon, or Stony Creek Township, Pennsylvania.").

[58] *Dickie Brennan*, 636 F.3d at 686–87.

[59] 2008 WL 450012 at *2 (S.D. Tex. Feb. 15, 2008) (Rosenthal, J.).

[60] *Id.*

[61] *Id.*

[62] *Id.* at *4.

---

The *South Texas Medical* court held that the insured's business interruption claim was not covered because there must be a "direct nexus between the civil authority's action and the prohibition of access to the insured premises."[63] The civil authority's decision to evacuate Wharton County was based only on the "*anticipated threat of damage* to Wharton County."[64] Though the civil authority considered that Hurricane Rita had damaged property in Florida when deciding to evacuate, that consideration of prior damage "was relevant only as a basis for anticipating the harm that could result if Hurricane Rita made landfall near Galveston."[65] The court held: "When, as here, the only relevance of prior damage to other property in deciding whether to issue a civil authority order that would preclude access to the insured's property is to provide a basis for fearing future damage to the area where the insured property is located, the causal link between the prior damage and the civil authority order is missing."[66] The court therefore found no coverage under the civil authority provision and granted summary judgment for the insured.[67] When the Fifth Circuit considered a similar insurance claim a few years later in the *Dickie Brennen* case, it relied extensively on *South Texas Medical* and likewise found no coverage.[68]

*South Texas Medical* is directly on point and disposes of AmSpec's claim for coverage under the civil authority provision of the Policy. The Policy provides coverage "while access to 'covered locations' or a 'dependent location' is specifically denied by an order of civil authority. *This order must be a result of direct physical loss of or damage to property*, other than at a 'covered

---

[63]     *Id.* at *9–10.

[64]     *Id.* at *10.

[65]     *Id.*

[66]     *Id.*

[67]     *Id.*

[68]     *Dickie Brennen*, 636 F.3d at 686–87.

location' and must be caused by a covered peril."[69] This provision is substantively identical to that in *South Texas Medical Clinics*, which required that the order of civil authority be "*due to direct physical loss of or damage to property*, other than at the described premises, caused by or resulting from any Covered Cause of Loss. . . ."[70] The Policy therefore requires there be a causal link between any prior direct physical damage and the civil authority order for AmSpec to recover on its Claim.[71]

Here, there is no proof that any order of civil authority was issued as a result of physical loss of or damage to other property.  The Coast Guard closed the ports of Houston, Texas City, Galveston, Freeport and Corpus Christi to inbound traffic at 6:57 PM EDT on August 24, 2017 by setting Port Condition Yankee.[72] According to the National Weather Service, Hurricane Harvey did not make landfall in Texas until the next day, at 10 PM on Friday, August 25, 2017.[73] The order closing the ports, as well as the other Coast Guard orders, predated the earliest possible damage to other property, and, thus, none of the orders of civil authority could have been issued *as a result of* prior damage to other property.

The content of the Coast Guard orders and bulletins further demonstrate that the Coast Guard closed the port because of Harvey's forecasted landfall, not as a result of damage. According to the prior Port Condition X-Ray order, the Coast Guard order that would set Port Condition

---

[69]     Policy, Appendix A-1, at 132 (Endorsement 6) (emphasis added).

[70]     2008 WL 450012 at *6 (emphasis added).

[71]     *See id*. at *10.

[72]     United States Coast Guard, "Coast Guard prepares response efforts for Hurricane Harvey" (August 24, 2017 06:57 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b2f48a.

[73]     "Major Hurricane Harvey - August 25-29, 2017," National Weather Service, https://www.weather.gov/crp/hurricane_harvey; *see also Kushner Lagraize, LLC v. Phoenix Ins. Co.*, CIV.A. 09-3376, 2009 WL 2922122, at *2 (E.D. La. Sept. 9, 2009) (denying civil authority coverage for the period prior to a hurricane's landfall and resultant damage).

Yankee and close the ports on August 24 was to be put in place because Harvey was expected to make landfall in twenty-four hours.[74] Furthermore, the Port Condition Yankee order is titled "Coast Guard *prepares response efforts* for Hurricane Harvey."[75] It explicitly states that "[t]he Coast Guard *is preparing response efforts* for Hurricane Harvey's impact on the coasts of Texas and Louisiana, Thursday."[76] None of the orders—including those for the Port of Port Arthur— mention damage to property, let alone that prior damage to other property was the reason for issuing the evacuation orders. The Coast Guard gave the orders closing the ports in preparation for Harvey's forecasted impact on the coasts of Texas and Louisiana, which did not occur until the following day. As in *South Texas Medical*, these orders made in preparation for potential damage do not support civil authority coverage under the Policy.

AmSpec incorrectly asserts in its Answer and Counterclaims that "[d]ue to Harvey's inflicted damage and continued destructive path, the United States Coast Guard closed down multiple Texas ports, including the Port of Corpus Christi, the Port of Texas City, the Port of Galveston, the Port of Port Arthur, and the Port of Houston."[77] The evidence to the contrary is clear: when the Coast Guard closed these ports, it did so primarily as a precautionary measure in preparation for a hurricane that had not yet impacted Texas or any nearby land mass, and not as a result of any damage. This Court should grant summary judgment on the civil authority provision, granting Evanston's request for declaratory judgment and denying AmSpec's breach of contract claim.

---

[74]     United States Coast Guard, "Coast Guard Sector Houston-Galveston Marine Safety Information Bulletin 09-17" (August 23, 2017), attached as Appendix B, at 2.

[75]     United States Coast Guard, "Coast Guard prepares response efforts for Hurricane Harvey" (August 24, 2017 06:57 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b2f48a.

[76]     *Id.*

[77]     AmSpec's Answer and Counterclaims, ECF No. 8, at 5.

**C.      Neither AmSpec's Dependent Locations nor its own property suffered any damage that caused an interruption of business or extra expense to AmSpec.**

The Dependent Location Endorsement provides:

**Dependent Locations –**
1.      Coverage -- Coverage for earnings and/or extra expense is extended to loss of earnings or extra expenses that "you" incur during the "restoration period" when "your" "business" is interrupted by direct physical loss or damage, caused by a covered peril, to property at a "dependent location" described on the schedule.[78]

It should be noted that AmSpec did not initially make a claim under this provision.[79]  AmSpec advanced this alternative argument more recently when litigation ensued.

Nevertheless, AmSpec claims that the ports are the Dependent Locations that suffered damage, causing AmSpec's losses. In response to requests for claim support, Amspec and its public adjuster advised as follows: "[t]he shutdown dates of the ports by the Coats [sic] Guard due to hurricane related damages is documented and included in the claim package" and "[t]he damage associated with the port closings has been documented in the Coast Guard port shutdown orders supplied and demonstrates the cloing [sic] by Civil Authority and the reason as Hurricane related damage and events."[80] The claim package attached some of the same orders discussed in  the previous section of this brief, under which the port was closed prior to the hurricane reaching Texas.[81] AmSpec likewise did not claim at that time that its own properties suffered damage that

---

[78]      Policy, Appendix A-1 at 178–79, 132.

[79]      *See* AmSpec Claim Package, Appendix A-4, at 3 ("This claim is submitted under the 'Interruption by Civil Authority' endorsement for the full period allowed of 60 days.").

[80]      *See* AmSpec Public Adjuster Statement, Appendix A-3.

[81]      *See* AmSpec's Claim Package, Appendix A-4, at 78 *& ff.*

caused business interruption or extra expense, even though it now claims this in its Counterclaims,[82] and it has provided no support for any such damage.

AmSpec's claim for business interruption losses and extra expense based on damage to Dependent Locations can be disposed of for the same reason as its Civil Authority claim: it is based on port closings that occurred as a precautionary measure rather than because of damage from Hurricane Harvey. The Policy requires that the business interruption and extra expense be caused by direct physical loss or damage from a covered peril to insured property or Dependent Locations,[83] but the port closings predated any damage to the ports or in fact to any property in Texas.

**D.      Because Evanston is not liable to AmSpec for breach of contract, Evanston is not liable on AmSpec's various extra-contractual causes of action.**

AmSpec asserts counterclaims against Evanston for the following extra-contractual causes of action: violation of the Texas Prompt Payment Act, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and violations of the Texas Deceptive Trade Practices Act ("DTPA").[84] None of these causes of action can be maintained without a viable breach-of-contract claim.

**1.      Prompt Payment Claim**

The Texas Prompt Payment of Claims Act only penalizes delay in payment of a claim if an insurer is liable on the claim.[85] Because Evanston is not liable on the claim for the reasons set out in the previous sections, it cannot be liable for delay in paying AmSpec's insufficient claim.

---

[82]      AmSpec's Answer and Counterclaims, ECF No. 8, at 5.

[83]      Policy, Appendix A-1 at 178–79, 132.

[84]      AmSpec's Answer and Counterclaims, ECF No. 8, at 7–11.

[85]      *See* Tex. Ins. Code § 542.060.

Additionally, Evanston cannot be liable for delay in notifying AmSpec of receipt of the claim, commencing investigation of the claim, or notifying AmSpec in writing of denial of its claim. Evanston notified AmSpec of receipt of its claim and commenced its investigation on August 30, 2017, the same day AmSpec made its claim to Evanston.[86] Evanston and AmSpec engaged in a detailed investigative and claims adjustment process, after which Evanston notified AmSpec in writing of its denial and the reason for the denial.[87] Evanston is entitled to summary judgment on AmSpec's prompt payment claim.

### 2.    Texas Insurance Code, DTPA, and breach of the duty of good faith

Where there is no breach of contract, there is no recovery for extra-contractual claims.[88] The only exception to this rule is when an insurance company commits "some act, so extreme, that would cause injury independent of the policy claim."[89] According to the Texas Supreme Court, Texas courts have "yet to encounter" an instance of a truly independent injury in this type of dispute.[90] Furthermore, "[e]vidence establishing only a bona fide coverage dispute does not demonstrate bad faith."[91]

---

[86]    Evanston Claim Acknowledgement and Investigation, Appendix A-2.

[87]    Evanston Denial Letter, Appendix A-5.

[88]    *E.g. USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018) ("The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy."); *Quibodeaux v. Nautilus Ins. Co*., 655 Fed. App'x 984, 987 (5th Cir. 2016) ("Under Texas law, to prevail on a common-law bad faith claim, an insured must first show that the insurer breached the contract. The same requirement applies to claims for statutory bad faith under Chapter 541 of the Insurance Code and under the Trade Practices Act." (citations omitted)); *Durham v. Allstate Vehicle & Prop. Ins. Co*., CV H-17-1752, 2019 WL 764581, at *4 (S.D. Tex. Feb. 4, 2019) (Hittner, J.).

[89]    *Menchaca*, 545 S.W.3d at 499.

[90]    *Id*.

[91]    *Durham*, CV H-17-1752, 2019 WL 764581, at *4 (quoting *Braden v. Allstate Vehicle and Prop. Ins. Co*., No. 4:18-CV-00592-O, 2019 WL 201942, at *6 (N.D. Tex. Jan. 15, 2019) (O'Connor, J.)).

---

Evanston justifiably denied AmSpec's claim under well-established Fifth Circuit law. AmSpec has provided no evidence, nor can it, of an independent injury: that it suffered anything other than a loss of contractual benefits to which it was not entitled.[92] AmSpec therefore cannot recover on its counterclaims under the Texas Insurance Code, DTPA, or breach of the duty of good faith. Evanston is entitled to summary judgment on all of these claims.

## V.
## CONCLUSION

Evanston requests that this court grant its claim for declaratory relief that Evanston timely and appropriately investigated and adjusted the Claim, that there is no coverage under the Policy for the Claim, and that Evanston appropriately denied AmSpec's Claim. Evanston further requests that this Court deny all of AmSpec's counterclaims, including breach of contract, Prompt Payment of Claims Act violations, Texas Insurance Code violations, DTPA violations, and breach of the duty of good faith. Finally, Evanston requests such other and further relief to which it may be entitled, including attorneys' fees, costs and expenses in prosecuting this action.

---

[92]    AmSpec's Answer and Counterclaims, ECF No. 8, at 6 ("Evanston has chosen to continue to deny timely payment. As a result, AmSpec has not been paid under the Policy provided by Evanston since the Hurricane.").

Respectfully submitted,

ZELLE LLP

By: _____ /s/ Todd M. Tippett _____
    Todd M. Tippett, *Attorney-in-Charge*
    State Bar No. 24046977
    Southern District of Texas No. 573544
    ttippett@zelle.com
    Michael P. O'Brien, *Counsel*
    State Bar No. 24103418
    Southern District of Texas No. 3338567
    mobrien@zelle.com

901 Main Street, Suite 4000
Dallas, TX  75202
Telephone:    214-742-3000
Facsimile:    214-760-8994

**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, has been served this 4th day of October 2019, by electronic filing as follows:

Jeffrey L. Raizner
State Bar No. 0078486
Andrew P. Slania
State Bar No. 24056338
Amy B. Hargis
State Bar No. 24078630
Ben Wickert
State Bar No. 24066290
RAIZNER SLANIA LLP
2402 Dunlavy Street
Houston, Texas 77006
Telephone:    713-554-9099
Facsimile:    713-554-9098
***Attorneys for Defendant/Counter-
Plaintiff***

_____ /s/ Todd M. Tippett _____
Todd M. Tippett