THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, § | |
| § | |
| PLAINTIFF, § | |
| § | |
| VS. § | |
| § | CIVIL ACTION NO. 4:19-CV-1498 |
| AMSPEC HOLDING CORP., § | |
| § | |
| DEFENDANT. § | |

**PLAINTIFF/COUNTER-DEFENDANT EVANSTON INSURANCE COMPANY'S RESPONSE TO DEFENDANT/COUNTERCLAIMANT AMSPEC HOLDING COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff/Counter-Defendant Evanston Insurance Company ("Evanston") files this Response to Defendant/Counter-Plaintiff AmSpec Holding Corporation ("AmSpec")'s Motion for Partial Summary Judgment on Business Income and Extra Expense Insurance Coverage (ECF No. 16) and requests that this Court deny AmSpec's motion.

**I.
SUMMARY OF ARGUMENT**

AmSpec has filed a motion for partial summary judgment requesting that the court find coverage for its business income and extra expense under its insurance policy with Evanston (the "Policy"). Evanston has filed a competing motion for summary judgment on this and all other claims.[1] AmSpec bases its claim on the closure of a number of ports in preparation for Hurricane Harvey's anticipated landfall.

AmSpec remains unable to identify any order of civil authority that is a result of physical loss or damage, which would provide coverage under the Policy. The evacuation orders themselves

---

[1] Plaintiff's Motion for Summary Judgment, Brief, and Appendix are filed as ECF Nos. 17–19.

do not state that they were a result of physical loss or damage, and AmSpec's other evidence does not provide any nexus between the evacuation orders and any loss or damage.

On-point Fifth Circuit and Southern District of Texas authority bars any coverage for AmSpec's claim. AmSpec first attempts to argue that "due to," as used in those cases, is different from the Policy's functionally identical use of "a result of." AmSpec then argues that this Court should ignore the cases from this jurisdiction and focus instead on cases with dissimilar facts from other jurisdictions.

This Court should deny AmSpec's motion for partial summary judgment as contravened by the Policy's clear language, as interpreted by other courts in this jurisdiction.

## II.
## ARGUMENT AND AUTHORITIES

For the following reasons, the Court should deny AmSpec's motion for partial summary judgment on its business interruption and extra expense claims.

**A.** **AmSpec has not identified any order of civil authority that is a result of physical loss or damage.**

The Policy's Interruption by Civil Authority coverage extension provides:

"We" extend "your" coverage for earnings and extra expense to include loss sustained while access to "covered locations" or a "dependent location" is specifically denied by an order of civil authority. This order must be a result of direct physical loss of or damage to property, other than at a "covered location" and must be caused by a covered peril.[2]

AmSpec argues that this coverage was triggered by the Coast Guard's orders setting Port Condition Zulu for the ports of Corpus Christi, Texas City, Port Arthur, and Houston.[3] AmSpec

---

[2] Policy, Appendix A-1, at 132 (Endorsement 6).

[3] Defendant's Motion for Partial Summary Judgment (ECF No. 16), at 9–10.

states that its "business is completely dependent on the traffic of vessels into and out of the ports . . . ."[4] AmSpec argues that these orders were the result of direct physical loss or damage.[5]

### 1. The orders of civil authority cited by AmSpec were not a result of physical loss or damage.

In the first place, none of the orders themselves state that they are the result of physical loss or damage, nor do they mention loss or damage of any kind.[6] All of the orders instead state that they are being issued because the Coast Guard is *preparing* response efforts for Hurricane Harvey's impact on the coasts of Texas and Louisiana.[7] Indeed, the orders closing the Port of Corpus Christi, the Port of Texas City, and the Port of Houston were all issued prior to Hurricane Harvey's landfall, at which point there had been no damage anywhere.[8] AmSpec points to no

---

[4]   *Id.* at 11. If that is the case, it is unclear why Port Condition Yankee, which precedes Zulu, is not the triggering event that AmSpec chooses as the alleged basis for its claim. Port Condition Yankee stops all inbound traffic to a port and requires vessels and barges to seek alternate destinations. *See* Plaintiff's Motion for Summary Judgment (ECF No. 18), at 5–6 (citing United States Coast Guard, "Coast Guard prepares response efforts for Hurricane Harvey" (August 24, 2017 06:57 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b2f48a; United States Coast Guard, "Marine Safety Information Bulletin" (August 28, 2017 10:00 AM), https://www.atlanticarea.uscg.mil/Portals/7/Eigth%20District/vtsPortArthur/documents/MSIB/MSIB_09-17_YANKEE-s.pdf?ver=2018-02-06-120748-217.).

[5]   Defendant's Motion for Partial Summary Judgment (ECF No. 16), at 11–15.

[6]   United States Coast Guard, "Coast Guard prepares response efforts for Hurricane Harvey" (August 24, 2017 06:57 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b2f48a; United States Coast Guard, "Update: Coast Guard prepares response efforts for Hurricane Harvey" (August 25, 2017 06:43 PM EDT), https://content.govdelivery.com/accounts/usdhscg/bulletins/1b32e9b; United States Coast Guard, "Marine Safety Information Bulletin" (August 28, 2017 10:00 AM), https://www.atlanticarea.uscg.mil/Portals/7/Eigth%20District/vtsPortArthur/documents/MSIB/MSIB_09-17_YANKEE-s.pdf?ver=2018-02-06-120748-217 ; United States Coast Guard, "Marine Safety Information Bulletin" (August 28, 2017 06:00 PM), https://www.atlanticarea.uscg.mil/Portals/7/Eigth%20District/vtsPortArthur/documents/MSIB/MSIB%2010-17_Zulu.pdf?ver=2018-02-06-120746-060; *see also* Coast Guard Orders, Appendix B to Plaintiff's Motion for Summary Judgment (ECF No. 18).

[7]   *Id.*

[8]   Harvey made landfall at 10 PM on Friday, August 25, 2017. "Major Hurricane Harvey - August 25-29, 2017," National Weather Service, https://www.weather.gov/crp/hurricane_harvey. The Coast Guard set Port Condition Yankee at 6:57 PM EDT on August 24, 2017 and Port Condition Zulu orders on August 25, 2017, at 6:43 PM EDT.

orders beyond these Port Condition Zulu orders, none of which were issued because of physical loss or damage.

> **2.     AmSpec is unable to show that the Coast Guard considered the port closing orders to be the result of physical loss or damage.**

In an attempt to amend these orders after the fact, AmSpec cites an August 29, 2017 bulletin from the Coast Guard and argues that it shows that the Coast Guard's decision to close the ports were the result of damage. The bulletin is not itself an order of civil authority. Nor does it provide any support that the port closing orders were the result of direct physical loss or damage.

AmSpec cites the following excerpt from the bulletin in support:

> The effects of Hurricane Harvey along the Texas coast resulted in significant flooding and impacted the surrounding ports. The Coast Guard . . . understand[s] the international and global significance of the Gulf Coast ports and are currently conducting surveys and thorough port assessments prior to reopening. . . . "The Coast Guard is working very closely with our federal, state, and local partners to make sure we do this as safely and as quickly as possible," said Capt. Tony Hahn, incident commander and captain of the port in Corpus Christi. "We are continuing port assessments and collecting data on damage, debris and pollution in order to regain full operation of the affected ports."[9]

Nowhere does this press release state that any new order of civil authority is a result of loss or damage, or that the previously promulgated orders were a result of loss or damage. Instead, it states only that the Coast Guard is "conducting surveys and thorough port assessments" before reopening the ports.[10] Additionally, the Port of Port Arthur is not even listed in connection with these comments.[11] AmSpec has failed to provide any evidence that demonstrates that the Coast Guard's the port closure orders are a result of direct physical loss of or damage to property.

---

[9]     Defendant's Motion for Partial Summary Judgment (ECF No. 16-9), at 2.

[10]    *See id.*

[11]    *Id.* Port Arthur is only displayed on the infographic at the beginning of the press release. *Id.* at 1.

> 3. **AmSpec's extensive weather data have no nexus to any of the cited orders of civil authority.**

AmSpec further cites a long list of weather data and argues that the "Coast Guard's findings are consistent with the wealth of weather data that details the significant destruction at and near to the ports, and AmSpec's covered locations, during Harvey."[12] First, this is a mischaracterization of the bulletin AmSpec cited immediately prior, which only stated that the Coast Guard was conducting surveys and port assessments, not that it had made any findings.[13]

More importantly, AmSpec makes no attempt to tie the long list of storm conditions and damage that it cites to any order of civil authority. The Policy requires that civil authority coverage is triggered when access to a location is specifically denied by an order of civil authority that is a result of direct physical loss of or damage to property.[14] As another court in this district stated when denying coverage on analogous facts, there must be a "direct nexus between the civil authority's action and the prohibition of access to the insured premises."[15] AmSpec's pages of weather data are simply immaterial to whether it has coverage under the Policy.

Finally, AmSpec's expert Tom Irmiter is not a credible expert and his conclusions do not support AmSpec's argument. His report, attached as exhibit 11 to AmSpec's Motion for Partial Summary Judgment, consists almost entirely of quotations from publicly available sources.[16] His

---

[12] Defendant's Motion for Partial Summary Judgment (ECF No. 16), at 12.

[13] LT Amy Midgett, "Update on port condition in areas impacted by Hurricane Harvey" Coast Guard Maritime Commons (August 29, 2017), found at (ECF No. 16-9), at 2.

[14] Policy, Appendix A-1, at 132 (Endorsement 6).

[15] *South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, CIV.A. H-06-4041, 2008 WL 450012 at *9–10 (S.D. Tex. Feb. 15, 2008) (Rosenthal, J.); *see also Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 686–87 (5th Cir. 2011) ("Civil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property.").

[16] Declaration of Thomas J. Irmiter (ECF No. 16-12), at 2–3.

report provides no scientific, technical, or other specialized knowledge that would help this Court to understand the evidence or to determine a fact in issue, because he performs no analysis of the weather data he cites.[17] Neither Irmiter nor his company inspected any of the ports, only structures "in the same general locations" as AmSpec's business locations, even though damage to those locations is not at issue in this action.[18]

Irmiter's report is particularly suspect in one important area. He gives a chronological order of important storm events in paragraphs 5–10 of his report.[19] Curiously, though every other event is in the order in which it happened, Irmiter reverses the order of Hurricane Harvey's landfall and the Port Condition Zulu orders on which AmSpec bases its entire argument for coverage.[20] The clear intent of this transposition is to give the impression, as he concludes, that the Coast Guard's port closure orders were the result of Hurricane Harvey's effects, rather than—as the orders themselves state—in preparation for Harvey. It is unclear whether Irmiter simply does not understand the information he cites, or whether he and AmSpec are trying to mislead this Court. Either way, Irmiter's analysis is incorrect.

The Court should reject Irmiter's weather data as immaterial and his expert report as not credible.

---

[17]   See Fed. R. Evid. 702.

[18]   See Declaration of Thomas J. Irmiter (ECF No. 16-12), at 2–3.

[19]   Id. at 3–4.

[20]   Id.

**B.     The Policy's language that an order of civil authority be "a result of" direct physical loss or damage is not substantively different from policy provisions requiring that such orders be "due to" direct physical loss or damage, under which on-point legal authority held there to be no coverage.**

The first definition of "due to" from the Merriam-Webster Dictionary is "as a result of."[21] Despite this obvious synonymity, AmSpec argues that the Policy's civil authority provision, which requires that the coverage-triggering order of civil authority be "a result of" direct physical loss or damage, is "a less stringent causation standard" than similar provisions using the phrase "due to."[22]

The reason for AmSpec's strained argument is that there exists clear and applicable authority from this district and from the Fifth Circuit that there is no coverage in these situations, as laid out clearly in Evanston's Motion for Summary Judgment.[23] AmSpec argues that non-binding cases from other jurisdictions should instead control, but neither case AmSpec cites is factually similar: one case involves civil authorities who explicitly stated that they issued an evacuation order because the storm had caused damage to property before it reached the evacuated location,[24] and the other case involves civil orders barring the generation of industrial waste *following* flooding that ravaged a city's waste water treatment system.[25] Neither case applies to

---

[21]   "Due to," *Merriam-Webster*, https://www.merriam-webster.com/dictionary/due%20to.

[22]   Defendant's Motion for Partial Summary Judgment (ECF No. 16), at 16.

[23]   *See* Plaintiff's Motion for Summary Judgment (ECF No. 18), at 13–17 (citing *South Texas Medical*, CIV.A. H-06-4041, 2008 WL 450012 at *9–10; *Dickie Brennan*, 636 F.3d at 686–87).

[24]   *Assurance Co. of Am. v. BBB Serv. Co., Inc.*, 265 Ga. App. 35, 36, 593 S.E.2d 7, 8 (2003) The *South Texas Medical* court did not find *Assurance* to be persuasive on similar facts to this case. CIV.A. H-06-4041, 2008 WL 450012, at *7.

[25]   *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, CIV.A.01-4679, 2002 WL 31247972, at *2 (E.D. Pa. Sept. 30, 2002) (mem. op.). The court in this case even approvingly cited a prior case where a court rejected coverage of civil authority coverage for preventative measures and stated that it was not the case in *Narricot*. *See id.* at *5 (citing Cleland Simpson Co. v. Firemen's Ins. Co. of Newark, 11 Pa. D. & C.2d 607, 612 (Pa. Com. Pl. 1958), aff'd sub nom. Cleland Simpson Co. v. Firemen's Ins. Co. of Newark, N. J., 392 Pa. 67, 140 A.2d 41 (1958) ("By no process of logic can we read into the policy that the risk includes prohibition of access because of apprehension of either the possibility or probability of a fire which never occurred.").

the instant situation, where the civil authorities state that the evacuation orders are in preparation for responding to a storm that has not yet caused any damage.

This Court should reject AmSpec's attempt to introduce a different standard or apply unpersuasive cases, where there exists binding authority based on similar facts and substantively identical language. Under that authority, AmSpec has no coverage.

### III.<br>CONCLUSION

For the reasons in this Response, and as supported in its own Motion for Summary Judgment (ECF No. 17), Plaintiff/Counter-Defendant Evanston Insurance Company requests that this Court deny Defendant/Counter-Plaintiff AmSpec Holding Corporation's Motion for Partial Summary Judgment on Business Income and Extra Expense Insurance Coverage (ECF No. 16).

Respectfully submitted,

ZELLE LLP

By: */s/ Todd M. Tippett*
Todd M. Tippett, *Attorney-in-Charge*
State Bar No. 24046977
Southern District of Texas No. 573544
ttippett@zelle.com
Michael P. O'Brien, *Counsel*
State Bar No. 24103418
Southern District of Texas No. 3338567
mobrien@zelle.com

901 Main Street, Suite 4000
Dallas, TX  75202
Telephone:    214-742-3000
Facsimile:    214-760-8994

**ATTORNEYS FOR
PLAINTIFF/COUNTER-DEFENDANT**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing, has been served this 15th day of October 2019, by electronic filing as follows:

Jeffrey L. Raizner
State Bar No. 0078486
Andrew P. Slania
State Bar No. 24056338
Amy B. Hargis
State Bar No. 24078630
Ben Wickert
State Bar No. 24066290
**RAIZNER SLANIA LLP**
2402 Dunlavy Street
Houston, Texas 77006
Telephone:     713-554-9099
Facsimile:      713-554-9098

*Attorneys for Defendant/Counter-Plaintiff*

                                                              */s/ Todd M. Tippett*
                                                          Todd M. Tippett